709 F.2d 32
 In re: Michael H. METZGER, Claimant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alan Henry CULBERT, Defendant,
Michael H. Metzger, Claimant-Appellant.
 No. 81-1619.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 10, 1982.
Decided June 24, 1983.
 
 Sean M. Rhatican, Richard L. Carico, Winokur, Maier, Zang, Spalding & Carico, Judd C. Iversen, San Francisco, Cal., for claimant-appellant.
 Kimberly A. Reiley, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellee.
 Appeal from the United States District Court for the Northern District of California.
 Before ANDERSON and REINHARDT, Circuit Judges, and JAMESON,* District Judge.
 J. BLAINE ANDERSON, Circuit Judge:
 
 
 1
 This case involves a dispute over the proceeds from the sale of the fishing vessel Jeannie S. II. The United States claims a priority by statute, 31 U.S.C. Sec. 3713 (formerly 31 U.S.C. Sec. 191, see footnote 1). Metzger claims a superior right by acquisition of a prior interest.
 
 I. OVERVIEW
 
 2
 Metzger provided legal assistance to his client in the form of criminal defense representation for several related matters. The client decided to submit the criminal case to the trial judge January 17, 1978, on stipulated facts. The client was found guilty and on February 16 was ordered to serve a five-year sentence in the custody of the Attorney General and pay a fine in the amount of $45,000. On January 27, the client executed an agreement, assigning to Metzger, as partial payment of legal services rendered, all of the defendant's rights, interest, and title in the fishing vessel Jeannie S. II. The vessel was in the custody of the United States Coast Guard, having been seized when the client was arrested thereon pursuant to an outstanding arrest warrant.
 
 
 3
 Before the Coast Guard released the vessel to claimant Metzger, it was seized by the United States Marshal under a writ of execution issued May 10, 1978, to collect the fine imposed by the February 16 judgment. Metzger, as owner of the vessel, then filed a claim with the Marshal for its release; whereupon the United States filed a petition in the district court to determine title to the vessel.
 
 
 4
 The Jeannie S. II was sold October 25, 1978, by the United States Marshal for the District of Maine on court order and the net proceeds of the sale were forwarded to the Clerk of the United States District Court for the Northern District of California, to be disbursed upon that court's determination of the rights of the United States and Metzger in the vessel.
 
 
 5
 The district court, on cross motions for summary judgment, concluded the United States had priority based upon 31 U.S.C. Sec. 191[1] and awarded judgment accordingly. Metzger appeals, challenging the application of Sec. 3713.
 
 II. DISCUSSION
 Section 3713 provides in part:
 
 6
 "(a)(1) A claim of the United States Government shall be paid first when--
 
 
 7
 (A) A person indebted to the Government is insolvent and--
 
 
 8
 (i) the debtor without enough property to pay all debts makes a voluntary assignment of property;
 
 
 9
 (ii) property of the debtor, if absent, is attached; or
 
 
 10
 (iii) an act of bankruptcy is committed; ..."
 
 
 11
 Pub.L. No. 97-258, 96 Stat. 972, 31 U.S.C. Sec. 3713 (1982). This section requires the following prerequisites to its application: a debt due to the United States by a person who is insolvent and either voluntarily assigns property, who is absent and yet his property is attached, or who commits an act of bankruptcy. The language in both Sec. 3713 and the former Sec. 191 is substantially identical, at least as to these phrases.
 
 
 12
 The United States argues the fine imposed as a criminal sanction is a debt due the United States and the defendant was insolvent at the time he assigned his interest in the Jeannie S. II to claimant Metzger. Metzger asserts there was no debt until the time of sentencing since until that time it was uncertain not only what the amount of any fine to be imposed would be, but more significantly, whether in fact any fine would be imposed.
 
 
 13
 Section 3713 is a statute with quite a lengthy history as it has been in existence, in much the same format, since 1789.[2] The section has been given a liberal construction to further the public policy it serves; "to secure an adequate revenue to sustain the public burthens and discharge the public debts ...." United States v. Moore, 423 U.S. 77, 81, 96 S.Ct. 310, 313, 46 L.Ed.2d 219, 224 (1975) quoting, United States v. State Bank of North Carolina, 6 Pet. 29, 35, 8 L.Ed. 308 (1832).
 
 
 14
 Moore conceded he owed a debt to the United States, but argued the statute did not apply because the amount of that obligation was not determined. The Supreme Court refused to adopt the position distinguishing between liquidated and unliquidated debts for purposes of Sec. 191. The Court stated the obligation was "fixed and independent of 'events after insolvency' [with] only the precise amount of that obligation await[ing] future events." Moore, 423 U.S. at 85, 96 S.Ct. at 315, 46 L.Ed.2d at 226.
 
 
 15
 We find it unnecessary to reach the insolvency question because we conclude the "debt" did not attach until sentencing. Prior to the assignment to claimant Metzger, the defendant had merely submitted the criminal action to the court for a decision on a stipulated fact statement. At that time, the district judge advised the criminal defendant of the maximum punishment (including prison term and fine) which could be imposed if he were found guilty. Stipulation p 6, page 2, Stipulation of Facts, March 19, 1981, Exhibit 1, Plaintiff's Cross-Motion for Summary Judgment and Opposition to Claimant's Summary Judgment Motion.
 
 
 16
 The Court found the criminal defendant guilty as charged on January 17, but judgment and sentencing was not had until February 16, 1978, almost three weeks from the date of the assignment to Metzger. Until the time of sentencing, no debt arose since, prior to that event, there was merely a potential debt, as the sentence to be imposed was in the judge's discretion. At the time of the conviction, any "debt" was not a present interest, rather one that might ripen on sentencing, subject to being extinguished completely by the imposition of a non-monetary penalty. The sentence could have been simply a prison term, or even a term of probation only; neither would have given rise to an obligation like a debt permitting the attachment of assets for satisfaction. No enforceable obligation existed until the act of sentencing. Section 191 was not intended as a forfeiture statute. Ruling otherwise in this case would allow the statute to be converted into a forfeiture provision. Only Congress could take such a step, we can not.
 
 
 17
 Because of our ruling on "debt," we see no need to discuss the issues of insolvency and the existence of an "act of bankruptcy" necessary to invoke the statute, nor the constitutional question raised by appellant involving the right to counsel.
 
 III. CONCLUSION
 
 18
 Even under a liberal construction, we conclude 31 U.S.C. Sec. 3713 can not fairly be interpreted to include the mere possibility of a fine being imposed at the time of sentencing as a "debt" in awarding priority to the United States. Accordingly, we find the district court erred in granting the United States priority, and we
 
 
 19
 REVERSE.
 
 
 20
 Costs on appeal are awarded to the appellant.
 
 
 
 *
 The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation
 
 
 [1]
 At the time of the assignment and court-ordered sale, 31 U.S.C. Sec. 191 provided:
 "Priority established.
 Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and the effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."
 Although there are differences in the wording of the two sections, as will be discussed subsequently, we treat them together as the language at issue here has not changed.
 
 
 [2]
 Act of July 31, 1789, ch. 5, Sec. 21, 1 Stat. 42, the fifth statute enacted by the first Congress. The section has been in substantially its present form since the Act of March 3, 1797, ch. 20, Sec. 5, 1 Stat. 515